**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **OFFICEMAX NORTH AMERICA,** | ) | **CASE NO.1:05CV1150** |
| **INC., fka OFFICEMAX, INC.** | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **I/OMAGIC CORPORATION** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant I/OMagic Corp.'s Motion to Dismiss, or in the Alternative to Stay. For the following reasons, the Court grants Defendant's Motion to Dismiss.

**FACTS**

This is an action for declaratory judgment brought by Plaintiff Officemax ("OM") on the sale of computer peripherals by Defendant I/OMagic Corporation ("IOMC") to Plaintiff. Plaintiff is an Ohio corporation and Defendant is a California corporation. This action is properly before the Court on diversity jurisdiction. In March of 2001, the parties entered into a vendor agreement whereby Defendant would sell products to Plaintiff for resale to the public in

1

Plaintiff's retail stores.  The parties entered into a similar vendor agreement for the year 2002.

In May of 2001, the parties entered into a separate agreement called "a Letter of Understanding"

(LOU)  also known as "the marketing agreement".  The vendor agreements were on preprinted

OM forms.  The LOU was prepared by IOMC.  The LOU required OM to pay IOMC sixty

million dollars a year for two years for IOMC's products.  In return, IOMC promised to spend

ten percent of its first year net sales on marketing its products.

In September of 2003, the parties entered into a fourth agreement called the "Settlement

Agreement".  The Settlement Agreement is governed by California law. This agreement resolved

accounting discrepancies and fully settled any disputes between the parties "from the beginning

of time through the date of this Agreement, under any and all previously executed Officemax

Domestic and/or Import Vendor Profile Agreements and their executed Amendments, including

but not limited to Consignments Amendments ("Vendor Agreements" entered into between

IOMC and OM (the "Disputes").

IOMC alleges that the Settlement Agreement in no way contemplated the LOU but

specifically pertained only to a resolution of the Vendor Agreements.  Early in 2005, IOMC

contacted OM about perceived breaches of the Settlement Agreement and the LOU.  IOMC

informed OM that if no settlement could be reached, IOMC would sue for breach of contract.

After some discussion, OM and IOMC resolved the breach of the settlement agreement,

however, no resolution was reached on the LOU.

On April 22, 2005, IOMC's outside counsel sent a letter to OM's counsel informing OM

that OM was in breach of the LOU and requested three million dollars to resolve the dispute.

The letter asked OM to respond by May 3, 2005.  On May 6, 2005, OM filed its declaratory

judgment action in United States District Court Northern District of Ohio.  On May 20, 2005, IOMC filed a breach of contract action in California state court.   The state action has subsequently been removed to Federal District Court in California by OM.

As it now stands, Defendant alleges that the Settlement Agreement dispute has been resolved and the only dispute is over the LOU "marketing agreement".  The LOU is not expressly governed by California law.

## LAW AND ANALYSIS

### Standard of Review

IOMC moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and  the Court's discretionary powers under the Declaratory Judgment Act. IOMC claims Plaintiff's action represents a mere race to the courthouse and IOMC, as the natural plaintiff, has filed suit in a proper forum.

"[I]t is well established that in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

## DECLARATORY JUDGMENT

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  Nevertheless, the Supreme Court has reiterated the discretionary nature of the Act.  In *Public Affairs Press v. Rickover*, 369 U.S. 111, 82 S.Ct. 580, (1962), the highest court opined: "The Declaratory Judgment Act was an

3

authorization, not a command.  It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Brillhart v. Excess Ins. Co.* 316 U. S. 491, 494, 499 (1942)].  Put another way, the declaratory judgment statute "'is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Green v. Mansour*, 474 U.S. 64 at 72 (1985).

The existence of an "actual controversy" depends on "whether the parties have 'adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment'..." *National Rifle Ass'n of Am. Magaw,* 132 F.3d 272, 280 (6th Cir. 1997) (quoting Golden v. Zwickler, 394 U.S. 103, 108 (1969)).   Also, a declaratory judgment action allows a party, "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975 at 977 (Fed. Cir. 1993).

In the Sixth Circuit, declaratory judgments are favored when (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when (2) it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.  *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.* , 746 F. 2d 323 at 325-326 (6th Cir. 1984). Consequently, if neither of these factors is satisfied, then the court should decline to grant the declaratory relief.

## ANALYSIS

This Court has previously held that the "first-to-file" is favored.  *ECC v. Comtech,* 4-CV-1607.  However, this case does not present a first-filed issue, as the first-to-file rule  "only applies to two cases filed in separate federal courts." *Amsouth Bank v.  Dale et al.,* 386 F.3d 763

4

at syllabus. Though the California case was subsequently removed to federal court it was first filed in California state court.

The Sixth Circuit "has adopted a five-factor test to determine when a district court should exercise jurisdiction over a declaratory judgment:

(1)whether the judgment would settle the controversy;

(2)whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3)whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4)whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5)whether there is an alternative remedy that is better or more effective"

*Id.* at 785.

The evidence demonstrates that this action presents a textbook " race to the Courthouse". On April 22, 2005, IOMC sent a letter asking for a response no later that May 3, 2005, threatening suit if the alleged contract requirements were not met.  Instead of responding, OM filed suit in Cleveland.  OM alleges this was the fourth letter threatening suit in 2005.  OM states IOMC would send a letter threatening suit, let the deadline pass then send another letter, without filing suit. These facts argue against the immediacy requirement of the Declaratory Judgment Act.  Rather than face suit in California, the Plaintiff filed suit in its home state seeking a determination that it did not breach the Agreements between OM and IOMC.  "Normally, when a putative tortfeasor sues an injured party for a declaration of nonliability, courts will decline to

5

hear the action in favor of a subsequently-filed coercive action by the 'natural plaintiff'." Id. (Quoting 10B Wright, Miller & Mary Kay Kane § 2765 at 638 (3d ed. 1998).  Though not a tort action, the reasoning applies in this breach of contract action.

Also a factor for the Court's consideration is the allegations contained in Plaintiff's Complaint.  Plaintiff is an Ohio corporation, and Defendant is a California corporation.  The express language of the Settlement Agreement states California law applies to the Settlement Agreement.   Defendant has alleged that the Settlement Agreement dispute is resolved and the only issue remaining is the dispute over the LOU.  However, construing the allegations contained in the complaint in a light most favorable to Plaintiff, the Court must assume that the LOU is encompassed by the Settlement Agreement and therefore, California law governs.  This argues in favor of dismissing the declaratory action in favor of the California suit.

Even if this Court were to find the first-to-file rule applied, The Northern District Court has stated in an unreported opinion, that an exception to the first-filed rule is "a first-filed suit should be dismissed or stayed in favor of a substantive suit.  This exception to the first to file rule will be applied where the parties and issues are the same, or essentially so, and it appears that the first filed suit was brought in anticipation of forthcoming suit by the substantive plaintiff." *Int'l Union v. Dana Corp.,* 1999 WL 33237054 (N.D. Ohio 1999).  The Court finds the *Dana Corp.* holding persuasive.

Therefore, the Court grants Defendant's Motion to Dismiss.

IT IS SO ORDERED.


   02/07/06                                      s/ Christopher A. Boyko

Date                            CHRISTOPHER A. BOYKO
                                         United States District Judge